```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ANGEL L. LAHOZ,

                    Plaintiff,              08 Civ. 3589

     -against-

ORANGE COUNTY, OFFICER DICHIARO, and
SGT. A. CONKLIN,

                    Defendants.

------------------------------------X

ANGEL L. LAHOZ,

                    Plaintiff,              08 Civ. 4364

     -against-

ORANGE COUNTY JAIL, LT. DIMARCOS,
SGT. WEED, SGT. W. STROPPEL,
C.O. J. KUSIK, C.O. CONKLIN,
C.O. ZEPPELIN, C.O. FLAGHER,
C.O. GOODENOUGH,

                    Defendants.

------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/09

OPINION

A P P E A R A N C E S:

    <u>Plaintiff Pro Se</u>

        ANGEL L. LAHOZ
        08A3842
        Downstate Correctional Facility
        Box F
        Fishkill, NY  12524

<u>Attorneys for Defendants</u>

DAVID L. DARWIN
County Attorney for Orange County
255-275 Main Street
Goshen, NY  10924
New York, NY  10007
By:  Marie Condoluci,
     Assistant County Attorney

**Sweet, D.J.,**

Angel L. Lahoz ("Lahoz" or the "Plaintiff"), an incarcerated inmate, has brought two claims, sounding in violations of 42 U.S.C. § 1983, against Orange County and various correction officers.  The claims arise from two separate incidents: the first alleged to have occurred on October 17, 2007, and the second on December 20, 2007.  The defendants in each action have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56, on the sole ground that Lahoz failed to exhaust available administrative remedies.  For the reasons stated below, the motions are denied.

**I.   PROCEDURAL HISTORY**

The complaint in Lahoz v. Orange County, 08 Civ. 3589 (the "Orange County Action"), was filed April 15, 2008.  The complaint in Lahoz v. Orange County Jail, 08 Civ. 4364 (the "Orange County Jail Action"), was filed May 9, 2008.

The instant motions were marked fully submitted on January 21 and 28, 2009.

1

## II.  FACTUAL ALLEGATIONS

### The Orange County Jail Action

According to the complaint in the Orange County Jail Action, on October 17, 2007, at approximately 1:30 p.m., defendants Sergeant Stroppel and Officer Conklin, "like every other day before," came to harass Lahoz while he was sleeping. They searched his cell and took his pens. Lahoz asked them how he was supposed to write his family if they took his pens. Conklin pulled out his pepper spray and told Lahoz to "lock in." Lahoz refused and told him to return his pens, to stop harassing him and leave him alone or to call the Lieutenant.

Lieutenant Dimarcos then came to the unit. Lahoz tried to argue his point to Dimarcos, who did not listen and then put his hands on Lahoz. Lahoz told Dimarcos not to touch him, and Dimarcos pushed Lahoz into his cell. Lahoz pushed Dimarcos's hands away, and Sergeant Stroppel pepper sprayed Lahoz. Lahoz turned around inside the cell, grabbed the footlocker and threw it toward the door. He could not see, so he did not know that the door was still open. The footlocker hit Dimarcos. An unspecified group of defendants then rushed into Lahoz's cell, called for back up, and jumped him, kicked

him, hit him with their elbows and knees, and punched him in the face and head multiple times. They handcuffed and shackled Lahoz and continued to beat him. They had him on the floor and twisted his wrist and legs. Lahoz complained about his ankles, back and wrist. He heard a female voice and felt a woman stand with one foot on top of his head. He later learned that it was Officer Zeppelin. Officer Kusik grabbed him by the neck, shocking him, calling him a "little bitch" and making it hard to breathe.

They then escorted Lahoz out of the unit, telling him to "shut the fuck up." When Lahoz kept talking, Sergeant Weed slammed him against the sally port glass window. Lahoz was escorted to main medical for an evaluation, and then "the box." Two weeks later he was charged with Attempted Assault in the Second Degree. Lahoz asked Lieutenant Dimarcos why he was being charged when he was the victim, and Dimarcos stated that it was nothing personal, "this is business and we have to cover our behinds."

As a result of the incident, Lahoz claims that he suffered injuries to his ankles, back and neck. He also fears officers when he is alone with them because he thinks they are going to beat him up.

**The Orange County Action**

According to the complaint in the Orange County Action, on December 20, 2007, at around 1:30 p.m., both Lahoz and Andre Reyford ("Reyford"), a fellow inmate who Lahoz had apparently conflicted with in the past, were called for visits. Officer DiChiaro came to escort Lahoz from the unit. Lahoz asked Dichiaro if Reyford had a "glasshouse" visit and she said "no." Lahoz told her that she should not put him in the same place as Reyford in order to avoid problems. Dichiaro told him not to worry, because Reyford was not in the glasshouse.

Lahoz asserts that every time he has a visit they leave him handcuffed and shackled in the glasshouse, in the company of other inmates who are not handcuffed and shackled. On the date of the incident, when Lahoz walked into the glasshouse, the first person he saw was Reyford, who attacked him. Lahoz was still handcuffed and shackled, and defended himself as best he could. DiChiaro called for backup, and when they arrived they tackled Reyford. Lahoz faced the wall and complied with orders, but Sergeant Conklin nevertheless pepper-sprayed him.

4

Lahoz was then escorted to main medical for medical attention. Lahoz saw DiChiaro in medical and told her "see what I told you," and she put her index finger over her lips and told him to be quiet because he was going to get her in trouble. Lahoz was then escorted back to his unit.

Lahoz claims that as a result of this incident, he suffered wrist injuries and ankle pain from the handcuffs and shackles, two bumps on his head and a bruise on top of his left eye that has caused him painful headaches.

### III. APPLICABLE STANDARD

There is split authority in this Circuit with respect to the question of whether a motion to dismiss for failure to exhaust administrative remedies that relies on evidence outside the complaint must be converted into a summary judgment motion. Compare Headley v. Fisher, No. 06 Civ. 6331 (PAC), 2008 WL 1990771, at *10 (S.D.N.Y. May 7, 2008) (accepting argument that exhaustion is an integral part of a prisoner's claim and that the court may therefore refer to materials outside the complaint when determining on a R. 12(b)(6) motion whether the plaintiff has exhausted administrative remedies); Cole v. Miraflor, No. 02 Civ. 9981 (RWS), 2006 WL 457817, *2 (S.D.N.Y. Feb. 23, 2006)

5

("Because the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to documents outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted his administrative remedies."), with Pierce v. Monell, No. 06 Civ. 1290 (LEK), 2007 WL 2847317, *5-6 (N.D.N.Y. Sept. 26, 2007) (holding that court could not consider exhaustion argument relying on evidence outside the complaint without converting motion to one for summary judgment); Williams v. Metro. Det. Ctr., 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005) ("[I]t is more appropriate in the case of this pro se plaintiff to proceed under a summary judgment standard, giving the plaintiff an opportunity to rebut the claim of failure to exhaust in his opposition."). However, the Supreme Court's recent decision in Jones v. Bock, 549 U.S. 199 (2007), suggests that such a motion should be treated as one for summary judgment. In Jones, the Supreme Court held that PLRA exhaustion is an affirmative defense and should be treated the same as any exhaustion argument. Exhaustion may be appropriate on a motion to dismiss if the allegations in the complaint establish the failure to exhaust, id. at 215 (citing Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." (quotation omitted)), but prisoners are not required to specially plead or demonstrate exhaustion in the

6

complaint. Id. at 216. Jones thus casts considerable doubt on the proposition that the exhaustion issue is an integral part of a prisoner's claim. See also Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993) (holding that trial court appropriately converted motion to dismiss to motion for summary judgment because materials outside the complaint were introduced on issue of exhaustion under Federal Employees Health Benefits Act). The instant motions rely on extrinsic material. In light of Jones, the Court will treat them as motions for summary judgment.

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

7

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

In addressing the present motion, the Court is mindful that Lahoz is proceeding pro se and that his submissions are held to "less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). The courts "construe the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments they suggest." Fuller v. Armstrong, 204 Fed. App'x 987, 988 (2d Cir. 2006); see also Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."). However, the courts will not "excuse frivolous or vexatious filings by pro se litigants," Iwachiw v. State Dep't of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir. 2005), and "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV. DISCUSSION

Defendants argue that under the Prisoner Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e, Lahoz's claims must be dismissed because he failed to exhaust available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner of any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available. Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004). In determining whether an administrative remedy is available, courts "should be careful to look at the applicable set of grievance procedures, whether city, state or federal." Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003). In each case, defendants have submitted an affidavit from Edward Kistner, who from January 2006 to September 2008 was the Grievance Coordinator at the Orange County Correctional Facility ("OCCF"). See Kistner Aff. ¶ 2. Exhibit A to the Kistner Affidavit is a copy of the OCCF inmate grievance procedures as

10

laid out in the inmate handbook. Id. ¶ 7, Ex. A. The procedures instruct, in relevant part:

> 2. Instructions and procedures for resolving problems and filing grievances. If you have a complaint or problem:
>
> a. Attempt to resolve the problem with the Officer assigned to your Housing Unit or the Housing Unit Supervisor.
>
> b. If for some reason you and the Officer or the Supervisor are unable to reach an acceptable resolution, you may request and will receive a grievance form by the end of the shift, but no longer than eight (8) hours of your request.
>
> c. Your grievance request must be submitted within five days of the incident.
>
> d. You may request and will receive assistance in filling out the form.
>
> e. The Chief Administrative Officer or his/her designee shall ensure that each grievance is investigated to the fullest extent necessary by an impartial person who was not personally involved in the circumstances giving rise to the grievance. . . .
>
> f. If you are not satisfied with the Grievance Coordinators [sic] decision, you may appeal the determination to the Corrections Administrator within two business days of receiving the decision.
>
> g. You will receive a response within five (5) business days.
>
> h. Grievances regarding dispositions or sanctions from the disciplinary hearings, administrative segregation housing decisions, issues that are outside the authority of the Chief Administrative Officer to control, or complaints pertaining to another inmate are not

11

grievable and will be returned to the inmate by the Grievance Coordinator.

Failure to exhaust administrative remedies may be excused:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

Defendants argue that Lahoz was fully aware of the grievance procedure, and in fact had made use of it on numerous prior occasions, but failed to file grievances related to the October 17, 2007 and December 20, 2007 incidents.

Both complaints acknowledge that the Orange County Jail has a grievance procedure and state that Lahoz "wrote the administration office, Coronel D. Orsino about the situation." DiChiaro Compl. 4.; Dimarcos Compl. 4 (stating that Lahoz "wrote the administration office, Coronel D. Orsino, about this situation"). In response to the motion in the Orange County Action, Plaintiff submits that "[t]he reason why [he] never

12

filed a grievance is because [he] was denied one by the Sergeant" and that "the only choice [he] had was to write Col. D. Orsino about the situation, which [he] did." Lahoz Aff. ¶ 3. Lahoz further submits that "[o]n occasions like the [incidents] on 6/22/08, 10/17/07, and 12/20/07[, t]hey always denied me a grievance." Id. ¶ 6. The Court reads these passages to indicate that for each of the relevant incidents, Lahoz complied with the OCCF grievance procedures and requested a grievance form, but his requests were refused. Defendants have not offered any evidence to refute the factual assertions in the Lahoz Affidavit, which the Court will therefore accept as true. Because Lahoz was denied recourse to the grievance procedures, his failure to exhaust procedural remedies must be excused.

### V. CONCLUSION

For the above stated reasons, Defendants' motions to dismiss and for summary judgment are denied.

It is so ordered.

**New York, NY**
**March 6, 2009**

_____
ROBERT W. SWEET
U.S.D.J.

13